Mr. Rivera, I believe you're up first. How much time would you like to reserve? Two minutes. Two minutes, okay. Whenever you're ready, sir. May it please the Court, Ruben Rivera for petitioner. The issue before the Court today is whether the immigration court, which made a mistake in denying withholding of removal to Mr. Ortiz based on persecution suffered because of his sexual orientation and specifically as part of a social group, and that's an effeminate individual. Mr. Ortiz suffered a long history of abuse from a very early age. When he was a child, he was raped and sexually abused several times. He was then rejected by his family. He had to become independent at around age 11. When he tried to be employed, his place of employment became so difficult and adverse for him that he was not able to continue working. When he was a young man, he was raped by two men, and he was arrested by the police for the only fact of congregating in a public place where homosexual men were known to meet. No other charges of any kind were ever made against him. And he finally decided to come to the United States when he became aware that there was a group of vigilantes that were killing undesirable individuals such as himself, and this fact is documented in the evidence that was submitted to the court, and that would be the Department of State report states that there are vigilantes who are carrying out a policy of social cleansing of undesirable individuals such as homosexuals. The immigration judge made four specific mistakes. He found that Mr. Ortiz did not suffer past persecution because of the rape that he suffered. That he did not suffer past persecution. Yes. In the context of his claim for withholding of removal. Correct. But that what he had shown was probably sufficient if he was seeking asylum. Correct. That's what the judge stated. All right. Now, if the evidence was sufficient to show past persecution for a claim for asylum. Right. And if the I.J. was wrong in saying we make it a harder or more difficult showing to get past persecution in the context of withholding of removal, if the I.J. was wrong in that, and we were to say, well, okay, there was still past persecution, what is the presumption that you would then apply in the context of withholding of removal if there were past persecution? Yes. If the court had found past persecution, then we would still be entitled to a presumption of future persecution, and the judge would have had to grant the mandatory form of relief of withholding of removal. Well, wait a minute. Wouldn't that be, then, that the government would have the opportunity to rebut that presumption? That is absolutely correct, Your Honor. But has there been any showing that the government did or did not rebut the presumption, or was there just no evidence on it? There is no evidence from the government that the presumption would be rebutted. Well, would that then mean that we should remand to the BIA for a further hearing and a determination as to whether the presumption, if the presumption applies, whether it's been rebutted, because that has not previously been determined? That is absolutely correct, Your Honor. You could provide the immigration judge an opportunity or the government an opportunity to rebut that presumption if that presumption were established, yes. Interesting case. One of the things that, I mean, this was a tragic case. Sadly, these kinds of things are repeated all over the world, including here in the United States. What I'm wrestling with is that in the context of the immigration laws of the United States, how ill treatment, horrible treatment that gay men and women suffer ties into the official governmental action. That's the part that I'm struggling with. There's no question that he suffered horrible persecution in that sense. But with the exception of the jailing of, I gather there was a group of young men that were in a plaza or something like that that were taken in for the night and so on. Is there any indication other than that, horrific though it was, that your client had any more, if you will, governmental knowledge of involvement in or attempts to exacerbate your client's difficulties as a gay man? Yes. Well, he stated that he did not seek protection from the police after the rape because he did not think that he would be, that they would provide him with protection. Does the record indicate how he made that determination, how he concluded that case? That was his whole statement. He did not state whether he had heard from other people. However, the evidence in the record does show that the first, that Guatemala has a poor, that the government of Guatemala has a poor record of human rights and that they have engaged in human rights violation. There are at least three reports in the record that state that the government will not prosecute these kinds of cases when the person who has made the complaint has suffered harm due to sexual orientation. Let's take your position. If you're right and if we were to agree with you, wouldn't that allow virtually every gay man in the world, in every country of the world, or gay woman for that matter, to have asylum in the United States of America? Well, this applicant has very specifically shown that him particularly has suffered what I believe is past persecution. I don't quarrel with that. My question to you is, most people, from Matthew Shepard on, who is no longer with us, can testify if their sexual orientation is homosexual, can testify to slights, to horrible things being done to them, being beaten up and so on. It happens throughout the world apparently from the beginning of time. And my question to you is, if you're right and if we agree with you, doesn't this lay a floor that permits every homosexual person in the world who has suffered similar outrages who is outside the United States to be able to come into the United States for asylum? I think Mr. Ortiz's case is different from just anyone, any other gay or lesbian person out in the world. Why is that? Because he is a particularly effeminate man who was easily identified and was easily identified from the time that he was a very small child. Okay, let's assume for just a second. I'm not going to hold it. You're going to get your full two minutes here. But let's assume that some percentage of the gay men and women in the world are similarly identifiable at some early point, either to themselves or to others. Let's say a quarter are. I have no idea what the figure might be, but let's just say it's a quarter. That could constitute potentially hundreds of millions of people. So I get back to the same question again. Isn't your argument that if we do this for your client, if the court construes what you've given to us as the law, then a gay man or woman who has those characteristics and who has suffered as your client has suffered would be able to make a legitimate claim for asylum in the United States? Well, I think if a gay or a lesbian foreign national has suffered this amount of past persecution and has suffered this harm on account of their sexual orientation, then I think they would qualify for asylum if they were already in the U.S., yes. So the answer to my question is yes. If someone similarly situated to Mr. Ortiz, I would think that they would be entitled at least under our law as it is, yes. Okay. You'll get your full two minutes when we get to rebuttal. We'll now hear from the government. Good morning, Your Honors, and may it please the Court. Michael Heiss on behalf of the Attorney General. The question in this case is whether Mr. Ortiz-Alvarado met his burden of proving that he faces a clear probability of future persecution in Guatemala. This Court has just engaged in an extensive discussion of what he endured and categorized it as persecution. I would suggest that persecution is a bit more of a term of art. While there is no doubt that what Mr. Ortiz-Alvarado went through was awful, tragic, as the Court pointed out, in order for it to constitute persecution, one, it must be more than mere harassment, as this Court pointed out in the first case. Well, surely you're not suggesting that being raped is mere harassment. Of course not. Absolutely not. So I think you're probably wasting your time with the Court if you suggest that what he experienced personally is not persecution. I think the real issue here is what the government involvement is. That might be more fruitful for you. Exactly. And that was the point I was getting to, Your Honor. Thank you. Persecution does require some form of government either action or inaction. And that is not present in this case. He had the experience of being rounded up with other gay men and taken in. If I recall the record correctly, they were stripped or something, made to stand around all night or something, never charged with anything, perhaps intimidated and called names. Is that not governmental action? That is governmental action. But, again, that gets to my earlier point. That is not necessarily persecution because this Court has repeatedly said that, one, brief detentions, including up to four days, do not constitute persecution. But also it must be an extreme concept. It must be more than mere harassment. And being detained is considered harassment. Now, is the extremity, and if you were here, you probably heard me ask this in connection to some of the other cases, does the extremity accumulative thing, based upon the variety of things that he's experienced, or is it limited to, in this case, his being rounded up with other gay men and brought into the police station? In this context, it's important to note that that is the only governmental contact. With respect to the rapes and the sexual molestations of the child, there is no government involvement in that. And as Chisholm's counsel pointed out, he did not report those to the authorities. And while this Court has said that that cannot be some kind of per se requirement that you report to the police, that is still relevant and is informative of whether the government had the opportunity. He says he didn't report them. And I don't know whether he testified that the government, in his view, the government wouldn't do anything about it because he's homosexual. Did that evidence come out? He made one statement. His testimony was that, and I'm quoting, law don't do anything, they don't give any importance to it. And that is his subjective belief. And as support for that, he said, see, they treat homosexuals differently in Guatemala. They rounded us all up, and this is how they treated us when they do that. That's what the government does, and that's how the government treats homosexuals. That's what his claim is. He's got past persecution. He is entitled to some presumption that that kind of persecution will happen again, because if, although the IJ said he didn't establish past persecution in the context of withholding, if we were to say that the standard for finding past persecution is the same for asylum or withholding, then he has established the past persecution. He's entitled to a presumption that there would be future persecution. And he's said in his testimony the government wouldn't, he didn't report it because they wouldn't do anything about it, and he supports that by the incident that occurred at the park. Now, the government does not in this case come forward with any evidence to say, well, that's not so. Guatemala really does protect. If the things are reported, we'll do something with it. But that never got before the IJ, did it? No, Your Honor. But, again, I need to kind of refocus what's happening here. There are two sets of standards or two methods by which an alien could gain the relief sought, and that is to, one, either prove past persecution or to establish, in this case, a clear probability of future persecution. Now, in this case- Well, those are two. Whether there was past persecution or a more than likely that it would occur again, those are two separate things. Yes and no. The past persecution does give rise to a presumption of the same thing or similar events occurring in the future. In this case, the immigration judge found that what happened to Mr. Ortiz-Alvarado, while unfortunate, did not rise to the level of past persecution. So his commentary at the end of the decision that this might be more amenable to an asylum analysis was in the context of a well-founded fear based on his fear of the justice makers, as opposed to a clear probability, which is a difficult standard. You express it a lot better than the IJ did. Agreed, Your Honor. What's also important is that, back to the context of reporting this to the police, he must convincingly establish that reporting to the police would have been futile or would have subjected him to future harm. And the immigration judge, in this context, found that the record evidence, while obviously he considered it, he especially mentioned that he considered every piece of evidence, wasn't compelling. And in order for this Court to overturn that, it must apply the substantial evidence standard and find that the record evidence is, in fact, compelling of that. And that is a highly deferential standard. That is a difficult burden for this Court to overcome. What is the burden of the Petitioner in this case with respect to governmental Well, let me back up. He did not accept for referring to what happened at the police station in the roundup. He did not report any of the incidents to the police based upon his fear that they would do nothing. What is the level, what's the burden that the Petitioner has to buttress that decision on his part? I'm referring to the Ocelo de Vila case that this Court decided where it discusses what is the relevance of reporting to the police or the failure to do so. And that is the standard. The Petitioner must convincingly establish that reporting incidents to the police would have been futile or subjected him to further abuse. Basically, it's whether or not reporting was reasonable, and that's an objective standard under those circumstances. Now, in that particular case, there was far more government involvement. There were four specific government incidents involved in that case. Beginning as a child, he reported his abuse to a teacher. The teacher's state employee did nothing. His own father had the local police chief detain him for six hours under the threat of future detentions if he didn't change his ways. That Petitioner worked as a corrections officer, himself a state employee, and was almost killed at work. He was harassed, and his supervisors arguably did nothing. They offered to change his shift. So from the government's perspective then, however heartfelt the Petitioner's concerns that no one would do anything, he simply didn't meet his burden to show that there was a well-founded fear that the government in the future would do nothing. Well, one that's important to note must be a clear probability. More than a well-founded fear. I can't stress that enough because that is a much more difficult burden. But yes, he bears the burden of proving his eligibility for the relief sought. And in this case, the immigration judge considered all the record evidence and simply did not find it compelling. And for these reasons, Your Honor, the Court should dismiss and deny the petition for you. Okay. Thank you very much. You'll have your full two minutes, Mr. Rivera. Thank you, Your Honors. I think what is very important to remember in this case is that Petitioner doesn't have to show that the government would participate in the persecution, but that there are groups that the government is unwilling or unable to control that would persecute him if he went back to Guatemala. So the reporting requirement had the --"Would the police protect him if he had made a report?" The evidence in the record shows that the police are not prosecuting these cases when the victims are homosexuals and they are suffering these kinds of harms. Do you have any citations to the record you can give us? Yes, Your Honor. There is a report. It's called Human Rights Guatemala. That's on page 173. Okay. And it says that there is police complicity. Not only do they not participate in the prosecution, but that there is police complicity and lack of arrest. There's another report. It's Sexual Orientation and Human Rights in the Americas. It shows that the authorities have little interest in prosecuting these cases. Again, this is specifically for homosexual men and crimes committed against them. Taking that for a minute, your client didn't report these. He may or may not have known about this report at that time. Correct. Did he provide any evidence as to why at that time he did not report, other than his subjective feeling that they wouldn't do anything? No, there was no further testimony from him, although, again, I would say that the evidence shows that he has an objective fear, objectively reasonable fear of returning to Guatemala. Thank you for your argument, both of you. We appreciate it. The case just heard will be submitted. The next case is Calderon Estrada v. Mukasey, which is submitted on the briefs and record and will be deemed submitted at this point. And we will now take argument in the case of League of Wilderness v. United States Forest Service.
judges: Tashima, Smith, Wu